UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>MATTHEW GREEN,<br><br>    Defendant. | Case No. 17-20822<br>Honorable Laurie J. Michelson |

**OPINION AND ORDER DENYING EMERGENCY MOTION FOR COMPASSIONATE RELEASE [69]**

Matthew Green has served 34 months or just under 50% of his 70-month prison sentence for heroin distribution. Because he believes he is particularly susceptible to complications from COVID-19, he requests a compassionate release order to either reduce his sentence to time served or convert the remainder of his sentence to home confinement.

Green has filed two motions for compassionate release. His first motion, filed pro se, provided little documentation of his medical conditions and contained a fabricated medical record. (*See* ECF No. 54; ECF No. 62-2, PageID.272.) He maintains that he had no part in the forgery. He withdrew the original motion after counsel was appointed to represent him. (ECF No. 63.) Green, through counsel, then filed a new emergency motion for compassionate release on September 11, 2020, providing extensive new documentation. (ECF No. 69.)

Although Green's medical record indicates that he may be at some heightened risk of complications if he were to contract COVID-19, it is not clear that his conditions present extraordinary and compelling circumstances. Further, the apparent attempt by Green or his supporters to present forged material to influence this Court's decision weighs heavily against

release. The Court will DENY his motion for compassionate release (ECF No. 69) without prejudice.

## I. Background

Upon the execution of a search warrant at Green's residence on October 30, 2017, law enforcement officers recovered approximately 129 grams of a heroin-and-fentanyl mixture, a stolen handgun with a high capacity magazine, a .223 caliber assault rifle with a loaded magazine, a bullet-resistant vest, and other drug paraphernalia. (ECF No. 37, PageID.123–124.) Green was charged in a sealed two-count indictment with being a felon in possession of a firearm and possession with intent to distribute at least 100 grams of heroin. (ECF No. 1.) He was detained on December 15, 2017. (PSR ¶¶ 1, 2.) Green pleaded guilty to possession with intent to distribute heroin pursuant to a Rule 11 agreement. (ECF No. 37.)

The Court sentenced Green on July 24, 2019. (ECF No. 45.) His sentencing guidelines range was 70 to 87 months. This included an enhancement for possessing a dangerous weapon in furtherance of a drug trafficking offense and a criminal history that included numerous drug convictions and jail time for attempted fleeing and eluding. (ECF No. 37, PageID.133–135.) Given the amount of heroin involved in this case, Green was subject to a mandatory minimum sentence of 60 months. After considering all of the sentencing factors under 18 U.S.C. § 3553(a), the Court sentenced Green to 70 months, the bottom of the guidelines range. (ECF No. 45.) Green is currently serving his sentence at the United States Penitentiary in Marion, Illinois (USP Marion). Since the date of his detention on December 15, 2017, Green has served 34 months or just under 50 percent of his 70-month sentence. He is scheduled to be released on December 24, 2022. (ECF No. 76, PageID.1015.)

Green now requests a sentence reduction under 18 U.S.C. § 3582. He states that he is particularly vulnerable to the coronavirus as "a 28-year-old, overweight Black man who with hypertension, prediabetes, unspecified breathing abnormalities, and a history of both smoking and gastrointestinal issues." (ECF No. 69, PageID.501–502.)

COVID-19 causes a respiratory disease that can result in serious illness or death. The Centers for Disease Control and Prevention (CDC) has advised that people with certain medical conditions, regardless of age, "*are at increased risk* of severe illness from COVID-19," including people with obesity (a body mass index (BMI) of 30 or higher) or Type 2 diabetes. *People with Certain Medical Conditions,* CDC, https://perma.cc/7BQG-Z2R3 (emphasis in original). People who have asthma, hypertension, or are overweight (a BMI between 25 and 30) "*might be at an increased risk* for severe illness." *Id*. (emphasis in original).

Multiple medical conditions may intensify these risks. For example, for hypertension, obesity, and diabetes, a person with two of these conditions is four-and-a-half times more likely to be hospitalized, and a person with all three conditions is five times more likely to be hospitalized. *COVID-19 Associated Hospitalization Related to Underlying Medical Conditions*, CDC, https://perma.cc/3MJQ-9ZS9.

The CDC has also issued guidance acknowledging that detention facilities "present . . . unique challenges for control of COVID-19 transmission among incarcerated/detained persons, staff, and visitors." *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, CDC, https://perma.cc/W3JW-4UQX20. "These include: low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention measures (e.g.,

3

social distancing and frequent handwashing).*" United States v. Kennedy*, No. 18-20315, 2020 WL 1493481, at *2 (E.D. Mich. Mar. 27, 2020). As the Sixth Circuit has summarized, the "COVID-19 virus is extremely contagious and conditions favor its more rapid transition in detention or correctional facilities." *United States v. You*, No. 20-5390, 2020 WL 3867419, at *1 (6th Cir. Apr. 22, 2020) (Order).

## II. Analysis

"[O]nce a court has imposed a sentence, it does not have the authority to change or modify that sentence unless such authority is expressly granted by statute." *United States v. Thompson*, 714 F.3d 946, 948 (6th Cir. 2013) (quoting *United States v. Curry*, 606 F.3d 323, 326 (6th Cir. 2010)). As amended by the First Step Act, and upon exhaustion of administrative remedies or the lapse of 30 days from the receipt by the warden of a request for compassionate release, 18 U.S.C. § 3852(c)(1)(A)(i) allows a court to reduce an inmate's sentence if the court finds that (1) "extraordinary and compelling reasons" warrant a reduction, (2) the reduction would be "consistent with any applicable policy statements issued by the Sentencing Commission," and (3) the applicable sentencing factors under § 3553(a) warrant a reduction.

### A. Exhaustion

The parties do not dispute that Green has satisfied his exhaustion requirement. Green submitted a request to the warden for compassionate release on May 5, 2020. (ECF No. 69, PageID.504.) The warden denied the request on June 11, 2020. (ECF No. 69-2, PageID.530.) The Government says that "Green has complied with § 3582(c)(1)(A)'s mandatory exhaustion requirement and may now move for relief." (ECF No. 76, PageID.1015–1016.) The Court agrees. *See United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020).

**B. Extraordinary and Compelling Reasons**

Green must demonstrate "extraordinary and compelling reasons" to justify his early release. 18 U.S.C. § 3852(c)(1)(A)(i). Congress has not defined "extraordinary and compelling." The commentary to U.S.S.G. § 1B1.13, adopted before the enactment of the First Step Act, provides a definition under Application Note 1. The following are "extraordinary and compelling" circumstances: (A) terminal illness diagnoses or serious medical, physical, or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) family related circumstances. U.S.S.G. § 1B1.13 cmt n.1(A)-(C). There is also a catch-all provision under subdivision (D), titled "Other Reasons." That section provides that "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13 cmt n.1(D).

Green's request arises under subdivision D's catch-all provision. Green cannot seek release under subdivision A because none of his medical conditions are "terminal illness diagnoses or serious medical, physical, or mental impairments" from which he is "unlikely to recover" or "substantially diminish" his ability to care for himself in prison. Only his hypertension would possibly meet this definition, but he is receiving treatment for this condition and nothing in the record suggests that it prevents Green from caring for himself in prison. *See, e.g.*, *United States v. Terry*, No. 11-20752, 2020 WL 4581691, at *4 (E.D. Mich. Aug. 10, 2020) (finding that hypertension was not considered a serious condition that substantially diminished defendant's ability to provide self-care or and from which he was not expected to recover); *United States v.*

5

*Harris*, No. 17-20136-2, 2020 WL 5891637, at *2 (E.D. Mich. Oct. 5, 2020) ("There is nothing in the record to suggest that Harris is unable to care for himself, nor would the Court expect this to be the case with managed hypertension."). Likewise, Green cannot seek relief under subdivision B because he is well under 65 years old. Green has tragically lost several family members while he has been incarcerated. Although this no doubt places a heavy burden on Green and his family, "family reasons" for compassionate release are limited to "[t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "[t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt n.1(C); *see also Harris*, 2020 WL 5891637, at *3.

The Court therefore considers Green's request for relief under subdivision (D).

District courts across the country have grappled with whether they can find extraordinary and compelling reasons for compassionate release under subdivision (D) given the prefatory language that suggests the issue is to be determined by the "Director of the Bureau of Prisons." But as another court in this Circuit has explained, the dependence on the BOP to determine the existence of an extraordinary and compelling reason, like the requirement for a motion by the BOP Director, "is a relic of the prior procedure that is inconsistent with the amendments implemented by the First Step Act." *United States v. Young*, No. 00-cr-00002, 2020 U.S. Dist. LEXIS 37395, at *15 (M.D. Tenn. Mar. 4, 2020). And "a majority of the district courts that have considered the issue have likewise held, based on the First Step Act, that they have the authority to reduce a prisoner's sentence upon the court's independent finding of extraordinary or compelling reasons." *Id*. at *16.

Courts have found that the novel coronavirus combined with other factors can satisfy the catch-all provision under subdivision (D). *See, e.g.*, *United States v. Oliver*, No. 17-20489, 2020 WL 2768852, at *6 (E.D. Mich. May 28, 2020); *Loyd v. United States*, No. 15-20394-1, 2020 WL 2572275, at *2 (E.D. Mich. May 21, 2020); *United States v. Pomante*, No. 19-20316, 2020 WL 2513095, at *6 (E.D. Mich. May 15, 2020); *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008, at *6 (E.D. Mich. May 7, 2020). As one court in this district has explained, "[t]he common features of the recent cases where inmates have been granted judicial relief on motions for compassionate release due to the pandemic are . . . properly exhausted claims that unreasonably were refused despite the existence of severe, chronic, or terminal conditions that could warrant release even in the absence of a pandemic" or "where the defendants had severe medical conditions which placed them at high risk of coronavirus infection, were housed at a facility with confirmed cases, and had served a large majority of their sentences." *United States v. Nazzal*, No. 10-20392, 2020 WL 3077948, at *3 (E.D. Mich. June 10, 2020). "An inmate's generalized fear of contracting Covid-19, without more, does not rise to the level of an extraordinary and compelling circumstance." *United States v. Urrabazo-Maldonado*, No. 20-3727, 2020 U.S. App. LEXIS 29873, at *4 (6th Cir. 2020) (unpublished); *see also United States v. Raia*, 954 F.3d 594, 2020 WL 1647922, at *2 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release."); *United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020).

As the Court will explain, Green has one condition that the CDC has recognized may place him at increased risk for severe illness from if he were to contract COVID-19. He also has a number of other health conditions, which he contends will make him particularly vulnerable to

complications from the virus. The risk from these conditions is compounded by Green's incarceration. Green cannot socially distance because he shares a six-by-twelve-foot cell with two other men. (ECF No. 69-5, PageID.552; ECF No. 79, PageID.1327.) He also reports that his facility, USP Marion, does not conduct regular testing beyond "sporadic temp checks" and that some staff members do not wear masks on a regular basis. (ECF No. 69-5, PageID.552.) According to the BOP website, as of October 16, 2020, two inmates at USP Marion have died of COVID-19. *See COVID-19*, Bureau of Prisons, https://perma.cc/TZ5R-XMYP. There are currently seven active prisoner cases and eight active staff cases at USP Marion. *Id.*

### 1. Hypertension

Records indicate that Green has had hypertension for some time. Hypertension is blood pressure greater than 130/80. *Facts About Hypertension*, CDC, https://perma.cc/RD99-CW6S. Green has had at least periodic episodes of hypertension since well before his incarceration, as early as January 23, 2017, when his blood pressure was recorded at 134/87. (ECF No. 73-3, PageID.918.) During his incarceration, Green's blood pressure indicated hypertension at least as early as October 21, 2019, when it was recorded as 141/97. (ECF No. 73-2, PageID.878.) The BOP began treating Green for hypertension on May 27, 2020, when he was prescribed Lisinopril for both hypertension and prediabetes. (ECF No. 73-1, PageID.724.)

After Green was hospitalized in July 2020 for recurrent vomiting and abdominal pain, the BOP took Green off Lisinopril and prescribed Pantoprazole, a proton pump inhibitor, to treat his hypertension, gastro-esophageal reflux disease without sophagitis, unspecified abdominal pain, and vomiting and gastrointestinal issues. (ECF No. 69, PageID.506; ECF No. 73, PageID.632, 675.) However, even with medication, Green's blood pressure has remained over 130/80. (*See*

8

ECF No. 69, PageID.507; ECF No. 73-1, PageID.769 (140/90 on June 24, 2020); ECF No. 73, PageID.651 (139/86 on July 7, 2020); ECF No. 73-2 (141/80 on July 18, 2020).)

Courts are not fully settled on the significance of hypertension in a request for release under subdivision (D). Even though the CDC has recognized hypertension may heighten the risks associated with COVID-19, many courts have found that a hypertension diagnosis alone is not sufficient to show extraordinary and compelling circumstances, especially if the condition is well managed. *See, e.g.*, *United States v. Colbert*, No. 99-cr-80399, 2020 WL 3529533, at *2 (E.D. Mich. June 30, 2020) (denying compassionate release motion because hypertension, "a condition that affects about 46% of the U.S. adult population," is not an extraordinary and compelling condition); *see also United States v. Santos*, No. 18-CR-20719-3, 2020 WL 5095527, at *4 (E.D. Mich. Aug. 28, 2020) (finding that "even if Defendant's conditions put him at an elevated risk of contracting COVID-19 or experiencing symptoms therefrom," the defendant's well-managed hypertension did not qualify as a condition that substantially diminishes his ability to provide self-care); *United States v. Gjokaj*, No. 17-cr-20335, ECF No. 52, at 262–63 (E.D. Mich. Aug. 27, 2020) (finding that hypertension alone is not a sufficiently extraordinary or compelling reason for release). But other courts have found hypertension is a sufficient medical risk that does weigh in favor of release. *See, e.g.*, *Segars v. United States*, No. 16-cr-20222, 2020 WL 3172734, at *3 (E.D. Mich. June 15, 2020) (granting release where petitioner's only CDC-recognized preexisting condition was hypertension); *United States v. Goins*, No. 11-cr-20376, 2020 WL 3064452, at *5–6 (E.D. Mich. June 9, 2020) (granting release based on petitioner's "well-documented and persistent hypertension" in combination with the severe outbreak of COVID-19 at the prison where he was held); *United States v. White*, No. 13-cr-20653, ECF No. 54 (E.D. Mich. May 20, 2020) (granting release under subdivision A based on finding that petitioner's worsening hypertension

and obesity were "serious medical conditions" and that petitioner could not care for himself in prison because he could not practice effective social distancing and hygiene); *cf. United States v. Urrabazo-Maldonado*, No. 20-3727, 2020 U.S. App. LEXIS 29873, at *4 (6th Cir. 2020) (unpublished) (affirming denial of compassionate release where petitioner claimed hypertension and asthma but had no formal diagnoses for either, and was not prescribed any medication other than a steroid inhaler for "routine" daily use and an Albuterol inhaler "as needed.").

In this case, it is not clear that Green's hypertension is "well managed"; it has persisted even with medication. Given that Green's hypertension has not responded to medication and the CDC's guidance that people with hypertension might be at increased risk for severe illness from COVID-19, Green's hypertension weighs in favor of release. But it is not dispositive.

### 2. Smoking

Although Green is a former smoker, in this case, the Court does not find that this fact favors release. (ECF No. 73-3, PageID.918.) As noted above, former smokers "might" be at an increased risk for severe illness from COVID-19. *People with Certain Medical Conditions,* CDC, https://perma.cc/7BQG-Z2R3. But neither Green nor the Government cite any legal authority on this factor. And while smoking or prior smoking may indicate an increased risk of complications, especially if it caused another respiratory ailment, there are obvious policy reasons why courts may hesitate to find that being a former, or current, smoker supports finding extraordinary and compelling reasons for release.

### 3. Green's Other Conditions

Green's other conditions present a more challenging question for the Court because they are not recognized by the CDC as indicating an increased risk from COVID-19. Green is prediabetic, his body mass index (BMI) is one point away from obesity, and he has unspecified

10

breathing and gastrointestinal issues. These conditions fall just short of CDC recognition. The CDC advises that people with diabetes and obesity are at an increased risk for severe illness from COVID-19. *People with Certain Medical Conditions,* CDC, https://perma.cc/7BQG-Z2R3. People with asthma "might" be at an increased risk. *Id.* But the CDC guidance is silent on prediabetes, a BMI that is overweight but not obese, and unspecified breathing issues. Courts have struggled to decide how to treat these conditions in motions for compassionate release.

The Court will start with Green's prediabetes and borderline obesity because they raise the same problem: Green's conditions are about as close as it gets without meeting the diagnostic definition for either prediabetes or obesity. His A1C (blood glucose level) is 0.1% away from a diabetes diagnosis. (ECF No. 73-1, PageID.717; ECF No. 73-2, PageID.885, 719, 720, 724.) An A1C of 6.5% qualifies as Type 2 diabetes. *See All About Your A1C*, CDC, https://perma.cc/5S5T-ALB9. According to his BOP records on June 1, 2020, Green had an A1C of 6.4%. (ECF No. 73-1, PageID.717.) His BOP medical record on that date contains the notation "borderline DM," meaning borderline diabetes. (ECF No. 73-1, PageID.720.) Similarly, Green's BMI is 29, just one point away from medical obesity. (ECF No. 69, PageID.505; ECF No. 73-1, PageID.718, 788.) *See Defining Adult Overweight and Obesity*, CDC, https://perma.cc/9HZV-M7M7. The CDC does recognize that people who are overweight with a BMI between 25 and 30 "might" be at an increased risk of severe illness. *People with Certain Medical Conditions*, CDC, https://perma.cc/7BQG-Z2R3 (emphasis in original). But Green asks the court to view his condition as being essentially equivalent to obesity.

Some courts have found that when a defendant is very close to falling within the CDC's definition of obesity or diabetes, the defendant's weight and prediabetes favor finding extraordinary and compelling circumstances. Indeed, some courts have held that prediabetes or

11

borderline obesity can weigh in favor of compassionate release when combined with other underlying conditions. *See, e.g.*, *United States v. Andrade*, No. CR 16-20751, 2020 WL 5505344, at \*2 (relying on scientific journals and newspaper coverage of rising infection rates as well as CDC guidance, finding that "Andrade's history of respiratory problems, obesity, and prediabetes puts him at an increased risk of severe illness from COVID-19, which is exacerbated by FCI Morgantown's failure to perform testing on a substantial portion of its occupants."); *United States v. Wren*, No. 10-cr-20137, 2020 WL 5087978, at \*5 (E.D. Mich. Aug. 28, 2020) (granting release where the government conceded that petitioner's severe obesity constituted extraordinary and compelling circumstances; petitioner also sought to rely on his prediabetes and signs of hypertension, and that his prison facility had four active cases); *United States v. Hilow*, No. 15-cr-170, 2020 WL 2851086, at \*4 (D.N.H. June 2, 2020) (granting release based on hypertension, high cholesterol, prediabetes, and borderline obesity). This approach makes sense as a practical matter. It is difficult to maintain that a blood glucose level difference of 0.1% or a single BMI point indicates a meaningfully lower risk of severe illness from COVID-19. But there is nothing in the record here to suggest that these numbers cannot also go down.

And other courts have held that prediabetes and borderline obesity do not present extraordinary and compelling circumstances, at least for petitioners in prison facilities with little to no active infections. *See, e.g.*, *United States v. Simmons*, No. 18-20270, 2020 WL 4816199, at \*2 (E.D. Mich. Aug. 19, 2020) (denying release for petitioner with a BMI ranging between 26.9 and 30, prediabetes, hypertension, and high cholesterol where BOP records indicated zero active COVID-19 cases at his facility); *United States v. Ewings*, No. 17-20178 (E.D. Mich. Aug. 17, 2020) (denying release for defendant with prediabetes and hypertension, in a facility with no active COVID-19 infections among inmates). Green's situation is slightly different from the situations in

12

*Simmons* and *Ewings* because USP Marion has ongoing active cases of infection. USP Marion saw an outbreak of 133 positive cases as of August 3, 2020. (ECF No. 69-7, PageID.569.) But a little more than two months later, that number is down to seven active prisoner cases and eight active staff cases. *See COVID-19*, Bureau of Prisons, https://perma.cc/TZ5R-XMYP. So the active cases at Marion don't tip the scales strongly one way or the other.

While there is practical appeal to treating borderline conditions like obesity and prediabetes as relevant to establishing extraordinary and compelling circumstances based on risks from COVID-19, at the same time, adhering to the CDC's list of conditions helps promote consistency in compassionate release decisions. As another court in this circuit recently explained: "While the Court sympathizes with [the petitioner's] concerns, it is unwilling to order the release of prisoners whose underlying conditions, based on the CDC's guidelines, do not place them at a heightened risk of severe illness from COVID-19; otherwise, the Court, to be evenhanded, would face the untenable situation of having to release all prisoners with any underlying condition." *United States v. Goodwin*, No. 2:13-CR-00037-11-JRG, 2020 WL 3273469, at *2 (E.D. Tenn. June 17, 2020), *reconsid. denied*, No. 2:13-CR-00037-11-JRG, 2020 WL 4432697 (E.D. Tenn. July 31, 2020) (citations omitted). *Goodwin* cited dicta from the Supreme Court and examples from other courts in this district. *See id.* (citing *Valentine v. Collier*, 140 S. Ct. 1598, 1600 n.2 (2020) (citing the CDC's guidelines in a case involving COVID-19); *Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 287 (1987) (stating in a disability discrimination case that "courts normally should defer to the reasonable medical judgments of public health officials") (cleaned up); *Awshana v. Adducci*, 453 F. Supp. 3d 1045, 1054 (E.D. Mich. 2020) (denying release in an immigration detention case, in part because "the petitioners in this case do not allege that they are in a high-risk category as defined by the CDC").

13

In other words, courts are still working to define the bounds of extraordinary and compelling circumstances in the context of this unprecedented pandemic, particularly for medical conditions that approach but do not quite meet the CDC's list for heightened risk.

### 4. Conclusion on Extraordinary and Compelling Circumstances

So Green's situation presents a close call. Green has presented three conditions that the CDC recognizes "might" present a heightened risk of complications: hypertension, being overweight, and being a former smoker. *See People with Certain Medical Conditions*, CDC, https://perma.cc/7BQG-Z2R3. His other medical conditions do not appear on the CDC list, but as a practical matter, his prediabetes and respiratory issues do seem to suggest the possibility of an increased risk of complications if Green were to contract the virus. And "it is well established that '[t]he more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19.'" *Andrade*, 2020 WL 5505344, at *3 (citing *People with Certain Medical Conditions,* CDC, https://perma.cc/7BQG-Z2R3).

But the Court need not and does not decide this close call. Even assuming that Green's conditions present extraordinary and compelling circumstances, Green does not qualify for release under the sentencing factors.

### C. Sentencing Factors

Even if a petitioner is otherwise eligible for compassionate release, the sentencing factors under 18 U.S.C. § 3553(a) must also support release. 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. These factors include the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, and to afford adequate deterrence. 18 U.S.C. § 3553(a). Additionally, a defendant must "not be a danger to the safety of

any other person or to the community" under 18 U.S.C. § 3142(g). *See United States v. Owdish*, No. CR 18-20423, 2020 WL 4596822, at *3 (E.D. Mich. Aug. 11, 2020).

The Court will cut straight to the heart of the matter. In terms of the sentencing factors, the one weighing most heavily against release is the nature and circumstances of the offense and the history and characteristics of the Defendant. Especially because the latter now includes a forged medical record that Green filed with his original motion.

When Green filed his original motion for compassionate release, he attached a May 14, 2020 letter purportedly signed by Dr. B. Dugas, M.D., of McLaren Emergency Medicine. (ECF No. 54, PageID.213.) On that date, Green was serving his sentence at USP Marion. The letter is on McLaren Healthcare letterhead and contains just two sentences: "To whom this may concern, Matthew Green (DOB 11/17/1991) has the following medical conditions; asthma, pancreatitis, gastritis, ulcers and diabetes. These conditions make it more likely for him to contract COVID-19." (*Id*.) Green not only attached the letter, he quoted it directly in his motion, presenting it as the first sentence of the section describing his medical condition: "Mr. Green has been diagnosed with asthma, pancreatitis, gastritis, ulcers and diabetes. See Attachment #1 and 2." (ECF No. 54, PageID.209.) But Dr. Dugas never wrote such a letter. In response to an inquiry from the Government, Dr. Dugas advised, "I have never treated Mr. Green and did not write this letter on his behalf. It is a forgery." (ECF No. 62-2, PageID.272.)

Green withdrew the motion after the Court appointed counsel. (ECF Nos. 55, 63.) His new motion for compassionate release attaches entirely new exhibits, which number hundreds of pages. (*See* ECF No. 69.) The new exhibits indicate, as discussed above, that Green has hypertension, is prediabetic, has a body mass index bordering obesity, and that he experiences undiagnosed gastrointestinal and respiratory issues. They do not support a diagnosis of diabetes.

Green tries to explain the forgery in a sworn declaration attached to the new motion. (ECF No. 78-2.) He states that he has had many medical problems during the course of his life and has seen a large number of medical providers. To prepare the original motion for compassionate release, he says, "I asked a few friends and family members to provide information I was unable to find on my own . . . At the time I received this information, I had no reason to believe that the records and letters were anything other than official and correct. . . . It was never my intention to fraudulently present this information. I have too much to lose by doing so." (*Id.*) And in the new motion for compassionate release, his counsel writes: "His mistake was asking someone to help him obtain his medical records and trusting what was sent to him." (ECF No. 78, PageID.1284.)

This explanation is not immediately persuasive. Is it really possible that when Green received the letter, he believed that he had in fact been diagnosed with asthma, pancreatitis, gastritis, ulcers, and diabetes? And by a doctor he didn't know?

That said, Green's medical history is not wholly unsupportive of these five conditions, and so maybe this was a sincerely held misunderstanding. Although Green's records do not include a documented diagnosis of asthma, BOP medical records indicate that he reported a history of asthma and is currently prescribed a daily inhaler for wheezing. (ECF No. 73-1, PageID.718, 788.) His BOP records also refer to a hospitalization in 2014 for "pancreatitis/ulcers/gastritis." (ECF No. 73-2, PageID.870.) Medical records from Hurley Medical Center from January 2017 state under the Past Medical History, "Diagnosis: Gastritis Pancreatitis, Ulcer." (ECF No. 73-3, PageID.917.) During the preparation of his presentence report last year, Green reported "a history of stomach ulcers with pancreatitis and gastritis." (PSR ¶ 62; *see also* ECF No. 73-2, PageID.730.) And this summer, Green was briefly hospitalized for recurrent vomiting and stomach pain. On July 20, 2020, his care providers at the BOP prescribed Promethazine and Pantoprazole for "gastro-

esophageal reflux disease without esophagitis." (ECF No. 73, PageID.632.) As for his diabetes, as discussed above, Green has not been formally diagnosed with diabetes, but he has been diagnosed with prediabetes. (ECF No. 73-1, PageID.717; ECF No. 73-2, PageID.885, 719, 720, 724.) And his BOP medical record on June 1, 2020 contains the notation "borderline DM," meaning borderline diabetes. (ECF No. 73-1, PageID.720.)

But even if the letter is not wholly lacking medical bases and even if Green is not wholly at fault for its contents, Green should have known that he has not been diagnosed with diabetes. And even if Green did not create the forgery himself, the Court is concerned that some member of Green's support system at home attempted to perpetrate a fraud on the court. This is the same support system that Green says will help him to adhere to the terms of home confinement and act as a law-abiding member of the community at this time. This is important because of the serious nature of the underlying offense—trafficking heroin laced with fentanyl with dangerous firearms and high capacity magazines in a home where three young children were living after sustaining several prior drug convictions.

It is true that some of the other sentencing factors favor release. The Court recognizes Green's hard work to better himself while incarcerated and to prepare to meaningfully contribute to his family and society upon his release. These efforts bode well for his future. And the Court is sympathetic to Green's recent loss of several members of his family while he has been in prison. Weathering this pandemic away from family is a significant burden.

But, in the end, the Court finds that, factoring in the attempt to file a forged medical document, Green's release would not promote respect for the law or adequately protect the public under 18 U.S.C. § 3553(a). Accordingly, the sentencing factors do not support compassionate release at this time.

17

### III. Conclusion

The Court therefore DENIES Green's motion for compassionate release (ECF No. 69) without prejudice. The Court does hope, however, that the BOP will consider Green for release to home confinement at the earliest possible date.

IT IS SO ORDERED.

Dated: October 20, 2020

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE
